HUNT & HENRIQUES
Kurtiss A. Jacobs # 218950
Donald Sherrill, Esq. # 266038
Jessica L. Danielski, Esq. # 308940
151 Bernal Road #8
San Jose, CA 95119-1306
Telephone (408) 414-0369
Facsimile (408) 360-8482

Attorneys for Hunt & Henriques, Inc.
File no. 1041225

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| George Ordonez,<br><br>    Plaintiff,<br><br>  vs.<br><br>Hunt & Henriques, Inc.<br><br>    Defendant;<br>_____<br><br>Hunt & Henriques, Inc.,<br><br>    Counterclaimant,<br><br>  vs.<br><br>George Ordonez,<br>Christian Ordonez, and<br>DOES 1 through 10, inclusive,<br><br>    Counterdefendants. | Civil action no.: 2:16-cv-01596-TLN-GG<br><br>**Anti-SLAPP motion to strike complaint**<br><br>**(California Code of Civil Procedure § 425.16)**<br><br>• Notice of motion<br>• Memorandum of points and authorities<br><br>Date:   October 6, 2016<br>Time:   2:00 p.m.<br>Courtroom: 2<br><br>The Honorable Troy L. Nunley, Judge |

1

**Notice of Motion and Motion**

TO PLAINTIFF GEORGE ORDONEZ AND HIS ATTORNEYS OF RECORD: please take notice that on Thursday, October 6, 2016, at 2:00 p.m. in Courtroom 2 of this Court, located at 501 I Street 15th Floor, Sacramento CA 95814, the Honorable Troy L. Nunley, Judge, presiding, Hunt & Henriques, Inc. (HHI) will and hereby does move this Court under California Code of Civil Procedure ("CCP") § 425.16 for an order specially striking Plaintiff's state law claim against HHI for violation of the state Rosenthal Fair Debt Collection Practices Act (RFDCPA, Civil Code § 1788 *et seq.*) The motion is made on the grounds that Plaintiff complains of the exercise of First Amendment rights of speech and petition and that Plaintiff cannot show a probability of success on the merits. Plaintiff cannot show a probability of success on the merits because (a) Plaintiff complains only of actions and communications that occurred in and before September, 2015; and (b) Defendant did not exist until January, 2016.

This motion will be based upon this Notice of Special Motion and Special Motion, the accompanying Memorandum of Points and Authorities, the supporting declaration of Michael S. Hunt, all of the records on file in this action including Plaintiff's complaint and its exhibits, and upon such other and further evidence or argument that the Court may permit at the hearing in this matter.

/s/

DATED: September 1, 2016 _____

Kurtiss A. Jacobs, LL.M. / Hunt & Henriques
Attorneys for Defendant Hunt & Henriques, Inc.

Hunt & Henriques, Inc's anti-SLAPP motion to strike (Code of Civil Procedure § 425.16)

# TABLE OF CONTENTS

Notice of motion ........................................................................................2

Table of Contents ......................................................................................3

Table of Authorities ..................................................................................4

    Federal constitution, statutes, and regulations .......................................4

    State statutes and rules ...........................................................................4

    Professional codes and rules ...................................................................4

    Federal cases ..........................................................................................4

    State cases ..............................................................................................4

Memorandum of Points and Authorities .....................................................6

I.   Introduction .......................................................................................6

II.  Ordonez's factual allegations and HHI's denials .....................................7

III.  Ordonez's legal theories .........................................................................8

IV.  Hunt & Henriques, Inc. (HHI)'s legal argument .....................................8

    IV.A. Standard for a special motion to strike ...........................................8

    IV.B. First-prong analysis.......................................................................11

    IV.C. Second-prong analysis ..................................................................13

    *HHI's evidence defeats Ordonez's claim as a matter of law* ............14

    IV.D. Ordonez should not be granted leave to amend the complaint .....15

Summary and conclusion ...........................................................................16

Hunt & Henriques, Inc's anti-SLAPP motion to strike (Code of Civil Procedure § 425.16)

**TABLE OF AUTHORITIES**

**Federal constitution, statutes and regulations**

United States Constitution, First Amendment ....................................8, 11, 16

15 United States Code. § 1692 et seq...........................................................8

28 United States Code § 1927.....................................................................15

Federal Rule of Civil Procedure 15. ...........................................................15


**State statutes and rules**

Civil Code § 47 ...................................................................................11, 12, 13

Civil Code § 1788 et seq.....................................................................6, 8, 15

Code of Civil Procedure § 425.16.......................6, 8, 9, 10, 11, 12, 13, 14, 16


**Professional codes and rules**

ABA Code of Professional Ethics, Canon 15 ..............................................12

[Former] California State Bar Rules of Professional Conduct 6-101(2) .......12


**Federal cases**

*Albrecht v. Lund* (9th Cir. 1988) 845 F.2d 193................................................16

*Ashcroft v. Iqbal* (2009) 556 U.S. 662..........................................................14

*Bell Atl. Corp. v. Twombly* (2007) 550 U.S. 544 ..........................................14

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*

      (9th Cir. 1999) 190 F.3d 963 ................................................9


**State cases**

*Albertson v. Raboff* (1955) 46 Cal.2d 375 ....................................................11

*A.F. Brown Electrical Contractor, Inc.*

      *v. Rhino Electric Supply, Inc.* (2006) 137 Cal.App.4th 1118 ..............11

*Blanchard v. DIRECTV, Inc.* (2004) 123 Cal.App.4th 903 ....................11, 13

*Briggs v. Eden Council for Hope & Opportunity*

  (1999) 19 Cal.4th 1106 .........................................................................10

*DuPont Merck Pharmaceutical Co. v. Superior Court*

  (2000) 78 Cal.App.4th 562 ..................................................................14

*Equilon Enterprises v. Consumer Cause Inc.*

  (2002) 29 Cal. 4th 53 ....................................................................8, 9, 12

*Hutton v. Hafif* (2007) 150 Cal. App. 4th 527 .............................................10

*In re Episcopal Church Cases* (2009) 45 Cal.4th 467 ...................................10

*Lerette v. Dean Witter Organization, Inc.* (1976) 60 Cal.App.3d 573 ..........12

*Nagy v. Nagy* (1989) 210 Cal.App.3d 1262..................................................5

*Navellier v. Sletten* (2003) 106 Cal.App.4th 763 ..........................................12

*Rubin v. Green* (1993) 4 Cal.4th 1187 .........................................................11

*Ruiz v. Harbor View Community Assn.* (2005) 134 Cal.App.4th 1456 .........12

*Rusheen v. Cohen* (2006) 37 Cal.4th 1048..................................................11

*Schaffer v. City and County of San Francisco*

  (2008) 168 Cal. App. 4th 992 ............................................................13

*Taus v. Loftus* (2007) 40 Cal.4th 683.....................................................10, 14

*Tuchscher Development Enterprises, Inc. v.*

  *San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219..............10

*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811 .......................10

*Yu v. Signet Bank/Virginia* (1999) 103 Cal.App.4th 298, 316......................11

**Memorandum of Points and Authorities**

## I. Introduction

**Capital One retained Hunt & Henriques to collect a debt from George Ordonez. Ordonez alleges that communications made by Hunt & Henriques in 2015 violated a state statute and constitutes a statutory tort. But Ordonez has sued a different person: Hunt & Henriques, Inc., which did not exist until 2016, has no employees, and has never conducted business. Can Ordonez prove that Hunt & Henriques, Inc., violated a statute by leaving a voice message?**

A non-party to this action, Hunt & Henriques, attempted to settle a defaulted debt to avoid having to file a lawsuit. Plaintiff's George Ordonez's son listened to a recorded message left by Hunt & Henriques. Ordonez's complaint alleges that his son's action converted the message into a statutory tort.

Even if this claim were viable, Ordonez could not prevail here because he did not sue Hunt & Henriques; he sued Hunt & Henriques, Inc. Legally, these entities are different persons every bit as much as are George and Christian Ordonez different persons.

Because the telephone call in question was logically related to litigation, Ordonez's state claim for violation of California's Rosenthal Fair Debt Collection Practices Act (Civil Code § 1788 et seq.) falls within California's anti-SLAPP statute (Code of Civil Procedure § 425.16). Because Ordonez cannot show a probability of success on the merits, his RFDCPA claim must be stricken. The court should deny leave to amend because there is no possibility that Ordonez could salvage his claim against HHI; not having existed until 2016, HHI could not possibly have committed a tort in 2015.

The anti-SLAPP motion should be granted without leave to amend, and Ordonez should dismiss his federal claim without forcing HHI to incur the expense of bringing a second dispositive motion.

6

## II. Ordonez's factual allegations and HHI's denials

As material, George Ordonez alleges in his complaint that:

- "defendant"—i.e., Hunt & Henriques, Inc. (HHI)—began efforts to collect a debt from Ordonez on July 13, 2015, by leaving a voice message (¶ 11);

- the caller who left the message twice identified himself as "Gary Carter" from "the Law Offices of Hunt and Henriques" (¶ 12);

- the caller stated that the call was an attempt to collect a debt (¶ 13);

- Ordonez's outgoing message states "You have reached the Ordonez family, please leave a message at the tone and we'll return your call shortly" (¶ 14);

- On July 13, 2015[1], Ordonez's son Christian heard the message and "learned that his mother was being sought by a debt collector and a law firm" (¶ 15);

- On July 13, 2015, plaintiff's counsel sent a demand letter to Hunt & Henriques—he does *not* allege any communication with Hunt & Henriques, Inc.—stating, "this firm has been retained by George Ordonez" (¶ 16); and

- On September 10, 2015, Ordonez received a voice message on a different telephone line stating that "The Law Office of Hunt and Henriques" was calling to collect a debt (¶ 18).

HHI denies that it engaged in any collection activity of any kind with Ordonez, his counsel, or anyone else. HHI is a recently-formed corporation that has no employees and has never conducted any business. Ordonez's attorneys know this; they have sent communications to Hunt & Henriques in the past and have *never* previously addressed a single communication to Hunt & Henriques, Inc.

HHI is informed and believes that Hunt & Henriques never received any letter from Ordonez's present counsel regarding the debt at issue in this action. On information and belief, Ordonez's present counsel never sent such a letter. On information and belief, Ordonez is represented by Robert L. Shepard, Esq.

---

1 Ordonez does not specify whether his son listened to the recorded messages later, or whether he heard the message as it was being recorded.

**III. Ordonez's legal theories**

Ordonez claims that the facts alleged constitute violations of various sections of the federal Fair Debt Collection Practices Act (15 United States Code § 1692 et seq.) and California's Rosenthal Fair Debt Collection Practices Act (Civil Code § 1788 et seq.). Because the RFDCPA incorporates most of the provisions of the FDCPA, the legal theories are essentially replicative. Ordonez states his theories regarding purported violation of the RFDCPA at ¶¶ 33-44:

- In ¶ 33, Ordonez alleges that "Defendant, Hunt & Henriques, is a 'debt collector' as that term is defined by the RFDCPA, Cal. Civil Code §1788.2(c)." (At 1:20-21, Ordonez specifies that when the complaint says "Hunt & Henriques," it refers to "Hunt & Henriques, Inc.")

- In ¶ 38 and its subparagraphs, Ordonez alleges, "defendant has violated the RFDCPA" in various ways, including disclosing to a third party that Ordonez owes a debt, misleading the debtor into believing that the caller is an attorney, and contacting Ordonez with knowledge that Ordonez was represented by counsel.

Because HHI has never engaged in any business operation of any kind, whether debt collection or otherwise, it is *not* a debt collector as defined by § 1788.2(c). As such, it is a legal impossibility for HHI to violate the RFDCPA.

**IV. Hunt & Henriques, Inc. (HHI)'s legal argument**

**IV.A. Standard for a special motion to strike**

California's anti-SLAPP[2] statute (Code of Civil Procedure (CCP) § 425.16) provides an early mechanism by which a cause of action complaining of the exercise of the First Amendment right of speech or petition can be stricken, and the wrongly-sued defendant can recover its reasonable court costs and attorney fees. It is codified in Code of Civil Procedure, but **§ 425.16 is a substantive right**

---

2 "SLAPP" is an acronym for Strategic Lawsuit Against Public Participation. *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57.

available in federal court against meritless state law causes of action that target

constitutional rights. *See United States ex rel. Newsham v. Lockheed Missiles &*

*Space Co.* (9ᵗʰ Cir. Cal. 1999) 190 F.3d 963, 973 ("twin purposes of the Erie rule—

'discouragement of forum-shopping and avoidance of inequitable administration of

the law'—favor application of California's Anti-SLAPP statute in federal cases").

Section 425.16(b)(1) provides (italics added):

> A cause of action against a person arising from any *act* of that person
> *in furtherance of the person's right of petition or free speech under the*
> *United States or California Constitution in connection with a public*
> *issue* shall be subject to a special motion to strike, unless the court
> determines that the plaintiff has established that there is a probability
> that the plaintiff will prevail on the claim.

The provision in italics in the block quote above is defined in § 425.16(e):

> As used in this section, "act in furtherance of a person's right of
> petition or free speech under the United States or California
> Constitution in connection with a public issue" includes: (1) any
> written or oral statement or writing made before a legislative,
> executive, or judicial proceeding, or any other official proceeding
> authorized by law, (2) any written or oral statement or writing made in
> connection with an issue under consideration or review by a
> legislative, executive, or judicial body, or any other official proceeding
> authorized by law, (3) any written or oral statement or writing made in
> a place open to the public or a public forum in connection with an
> issue of public interest, or (4) any other conduct in furtherance of the
> exercise of the constitutional right of petition or the constitutional right
> of free speech in connection with a public issue or an issue of public
> interest.

The anti-SLAPP statute "shall be construed broadly." Section 425.16(a).

The legislature enacted the statute to address the "disturbing increase in

lawsuits brought primarily to chill the valid exercise of the constitutional rights of

freedom of speech and petition for the redress of grievances." CCP § 425.16(a).

The statute allows early evaluation of a lawsuit's merits using a summary-

judgment-like procedure. *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29

Cal.4ᵗʰ 53, 57. The statute calls the procedure a "special motion to strike." Code of

Civil Procedure § 425.16(b)(1). It is also known as an "anti-SLAPP motion." *See*

*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1117.

Section 425.16(b) describes a **two-prong process** for deciding the special

motion to strike: **(1)** the court determines whether the defendant has shown that the challenged cause of action arises from activity protected by § 425.16(e); if so, then **(2)** the court determines whether the plaintiff has demonstrated a probability of prevailing on the claim. *In re Episcopal Church Cases* (2009) 45 Cal.4th 467, 477.

The second prong itself involves two steps: the plaintiff "must demonstrate that the complaint is both **[a]** legally sufficient and **[b]** supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 (superseded on other grounds by §§ 425.16(b)(3), 425.18; see *Hutton v. Hafif* (2007) 150 Cal.App.4th 527, 537).

Thus, Ordonez must show that he has alleged facts sufficient to state a claim. *Id.* He must also present *admissible* evidence to support every prima facie element of his claim. *See, e.g., Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1238, "disregard[ing] a substantial portion of TDE's evidence" because the evidence was inadmissible. The Court of Appeal admitted other evidence; but the admissible evidence was insufficient to show a probability of success, and the order granting the anti-SLAPP motion was affirmed.

The court must "consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." CCP § 425.16(b)(2). The court does not weigh credibility or strength of competing evidence: if plaintiff's evidence could sustain a favorable verdict, then the special motion is denied; but the special motion is granted if the defendant's evidence defeats the claim as a matter of law. *Taus v. Loftus* (2007) 40 Cal.4th 683, 714.

HHI now shows that § 425.16(e) applies:

\\\\\\\\\\\\\\

\\\\\\\\\\\\\\

\\\\\\\\\\\\\\

10

**IV.B. First-prong analysis**

**A cause of action falls within the anti-SLAPP statute's protection if it complains of any communication before a judicial proceeding[3] or in connection with an issue under review by a judicial body.[4] Ordonez complains of a prelitigation telephone call, which is a communication made before a judicial proceeding and in connection with an issue under review by a judicial body. Does the complaint fall within the anti-SLAPP statute's protection?**

At this point, it is irrelevant whether Ordonez can prevail; if he can, then the motion will be denied under second-prong analysis. For first-prong analysis, the only question is whether he complains of the exercise of First Amendment rights.

In short, a collection action "satisfies the 'arising from' standard" of § 425.16. *Yu v. Signet Bank/Virginia* (1999) 103 Cal.App.4th 298, 316. Thus, any action "in furtherance of" (*see* § 425.16(b)(1)) the collections action—such as postjudgment liens and levies (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1052, 1065), or prelitigation demand letters or other communications (*Blanchard v. DIRECTV, Inc.* (2004) 123 Cal.App.4th 903, 919)—falls within § 425.16(e)(2).

*See also Rubin v. Green* (1993) 4 Cal.4th 1187, at p. 1194 (original italics):

> In light of this extensive history, it is late in the day to contend that communications with 'some relation' to an *anticipated* lawsuit are not within the [litigation] privilege. Following Albertson v. Raboff, supra, 46 Cal.2d 375, numerous decisions have applied the privilege to prelitigation communications, leaving no doubt as to its applicability to the facts alleged in the amended complaint.

Some courts have noted that the anti-SLAPP statute and litigation privilege are separate statutes with distinct purposes, and this is true. But their purpose and scope largely overlap. Even while noting their differences, *A.F. Brown Electrical Contractor, Inc. v. Rhino Electric Supply, Inc.* 137 Cal.App.4th 1118, stated at p. 1125 that the protections of § 425.16(e)(1) and (2) "are coextensive with the

---

3 Code of Civil Procedure § 425.16(e)(1).
4 Code of Civil Procedure § 425.16(e)(2).

1  litigation privilege of Civil Code section 47, subdivision (b)" (citing *Ruiz v. Harbor*
2  *View Community Assn.* (2005) 134 Cal.App.4th 1456, 1467, fn. 3).

3          And *Navellier v. Sletten* (2003) 106 Cal.App.4th 763 stated at p. 770, "The
4  privilege informs interpretation of the 'arising from' prong of the anti-SLAPP
5  statute [citing *Equilon*, *supra*], but protections afforded by the statute and the
6  privilege are not entirely coextensive."

7          Even while stating that the protections were not *entirely* coextensive, the
8  cases that *Navellier* cited supported only one difference: the anti-SLAPP statute
9  applies to a malicious prosecution cause of action while the litigation privilege does
10  not. *Navellier* at p. 770. *Navellier* then went on to analyze § 47(b) and find that the
11  cases interpreting it applied the privilege only to communications and
12  communicative acts, and not to actions themselves; whereas the anti-SLAPP statute
13  by its own terms does apply to acts in addition to communications. *Navellier* at
14  p. 770; CCP § 425.16(b)(1).

15          So to the extent that they are not coextensive, the anti-SLAPP statute is
16  *broader* than the litigation privilege. *See also* § 425.16(a), requiring that the statute
17  "be construed broadly."

18          An attorney's right—indeed, *obligation*—to attempt to settle disputes without
19  instituting litigation far predates the 1992 enactment of the anti-SLAPP statute.
20  Forty years ago, *Lerette v. Dean Witter Organization, Inc.* (1976) 60 Cal.App.3d
21  573 cited both the ABA Code of Professional Ethics, canon 15, and California State
22  Bar Rule of Professional Conduct 6-101(2) as well as a treatise in stating at p. 577:

23          As any competent attorney is aware, access to the courts is not an end
           in itself but only one means to achieve satisfaction for a client. If this
24          can be obtained without resort to the courts—even without the filing of
           a lawsuit—it is incumbent upon the attorney to pursue such a course of
25          action first. It is equally well established legal practice to communicate
           promptly with a potential adversary, setting out the claims made upon
26          him, urging settlement, and warning of the alternative of judicial
           action. Dubow's September 12 letter is a typical example of such a
27          missive.

28          At the time that Hunt & Henriques (cf. HHI) makes *any* communication—

12

whether in writing or by telephone—it anticipates that if prelitigation communications do not result in a voluntary settlement, then litigation may be necessary to collect the debt. Declaration of Michael S. Hunt, ¶ 5. As per *Blanchard v. DIRECTV*, *supra*, it is not necessary that a demand letter or other prelitigation communication actually result in litigation to fall within the litigation privilege. In *Blanchard*, DirecTV filed suit on only about 6% of the demand letters at issue in Blanchard's complaint—but *all* of the letters were privileged. Given the public policy favoring negotiation and resolution short of litigation (*Lerette*, *supra*), and given the statutory mandate that the anti-SLAPP "shall be construed broadly" (§ 425.16(a)), the prelitigtion phone call falls within § 425.16.

This is not unfair, and it is not unduly burdensome. The anti-SLAPP statute is not a bar to any cause of action; when "there is merit to the plaintiff's cause of action, the plaintiff can avoid dismissal simply by establishing a probability of prevailing" under second-prong analysis. *Schaffer v. City and County of San Francisco* (2008) 168 Cal.App.4th 992, 1004.

Ordonez complains *only* of attempts to contact him regarding the subject of a potential lawsuit. *See* complaint ¶¶ 9-18.

This satisfies HHI's burden of showing that the complaint falls within § 425.16(e). Ordonez now bears the burden of showing that he could prevail at trial. This is Ordonez's burden to prove, not HHI's to disprove; HHI could submit its motion here and reply to Ordonez's opposition. But since Ordonez's burden is insurmountable, HHI refutes Ordonez's second-prong showing in advance, and demonstrates that leave to amend should be denied as futile.

**IV.C. Second-prong analysis**

**The SLAPP plaintiff must show a probability of success on the merits. Ordonez sued a person different from the one he alleges harmed him. Can Ordonez show a probability of success on the merits?**

It is necessary but not sufficient for the SLAPP plaintiff to show that a valid

claim has been *pleaded*; he must also establish evidentiary proof of a prima facie

showing of facts establishing a probability of prevailing. As one court put it:

> In overruling the demurrer, the trial court determined plaintiffs had
> stated a legally sufficient claim, an issue we are not here reviewing.
> However, in order to satisfy its burden under the second prong of the
> anti-SLAPP statute, it is not sufficient that plaintiffs' complaint
> survive a demurrer. Plaintiffs must also substantiate the legal
> sufficiency of their claim. It would defeat the obvious purposes of the
> anti-SLAPP statute if mere allegations in an unverified complaint
> would be sufficient to avoid an order to strike the complaint.
> Substantiation requires something more than that. Once the court
> determines the first prong of the statute has been met, a plaintiff must
> provide the court with sufficient evidence to permit the court to
> determine whether "there is a probability that the plaintiff will prevail
> on the claim." (§ 425.16, subd. (b)(1).)

*DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562,

568.

Here, Ordonez cannot show a probability of success on the merits. He cannot

do so because (1) he has not alleged facts sufficient to satisfy the *Iqbal/Twombly*

standard of stating a claim on which relief can be granted; (2) he does not have

admissible evidence to support every element of a prima facie claim; and (3) HHI's

evidence defeats Ordonez's claim as a matter of law.

Any one of these points is sufficient to mandate that the motion be granted;

and under § 425.16(b), it is Ordonez's burden to show that none of the three is true.

In the interest of judicial economy, HHI will address only point 3 here, as the most

easily-proven dispositive argument—but HHI does not waive its right to have the

complaint stricken if Ordonez is unable to disprove point 1 or 2.

**HHI's evidence defeats Ordonez's claim as a matter of law**

The California Supreme Court has stated that even though the court accepts

all of the SLAPP plaintiff's *admissible* evidence as true and "though the court does

not weigh the credibility or comparative probative strength of competing evidence,

it should grant the motion if, as a matter of law, the defendant's evidence

supporting the motion defeats the plaintiff's attempt to establish evidentiary support

for the claim." *Taus v. Loftus* (2007) 40 Cal.4th 683, 714.

14

So Ordonez could come into court with the actual recordings, and even a video of his son listening to the recordings, but the motion would still have to be granted, because the defendant whom Ordonez has chosen to sue *did not even exist* in 2015 when Ordonez alleges the offending telephone calls were received.

The accompanying declaration of Michael S. Hunt, a partner of Hunt & Henriques and a shareholder of Hunt & Henriques, Inc., corroborate the document attached as Ordonez's exhibit A, which shows that Hunt & Henriques, Inc. was incorporated on January 4, 2016. It was *impossible* for HHI to commit the torts that Ordonez alleges that it committed in July 2015.

Knowing this, it would be sanctinoably frivolous (*see* 28 United States Code § 1927) for Ordonez to oppose this motion on *any* basis—but especially on the "ground" that his attorney's mistake was a typographical error or a minor mistake in identity. Ordonez's complaint is premised on the fact that George Ordonez and Christian Ordonez are two separate people. And there is no shortage of cases in the past in which either a Sr. or a Jr. has sued a creditor—even a judgment creditor— for such a mistake when even the first names were the same. It is a matter of black-letter law that Hunt & Henriques (the law partnership) and Hunt & Henriques, Inc., are two different persons, with *entirely* distinct identities, assets, and liabilities, as would be George Ordonez, Sr. and George Ordonez, Jr. and just as are George Ordonez and Christian Ordonez.

Hunt & Henriques, Inc.'s evidence defeats Ordonez's RFDCPA claim (as well as his FDCPA claim, which is not at issue in this particular motion) as a matter of law. Thus, Ordonez cannot satisfy his second-prong burden of demonstrating a probability of success on the merits. Therefore, HHI's anti-SLAPP motion should be granted—*without leave to amend*.

**IV.D. Ordonez should not be granted leave to amend the complaint**

Federal Rule of Civil Procedure 15 favors liberality in granting leave to amend. But where amendment would be futile, it is proper to deny leave to amend.

15

*Albrecht v. Lund* (9th Cir. 1988) 845 F.2d 193, 195, modified, 856 F.2d 111. Any amendment that Ordonez might offer would be futile, because he sued no DOE defendants and cannot possibly state a claim against a defendant that did not exist until 2016 for "facts" that occurred in 2015.

And denying leave to amend would not be unjust. While denying leave to amend would prevent Ordonez from altering his claims against HHI, it would not bar him from bringing any *valid* claims against HHI. But because HHI has *never conducted any business of any kind whatsoever*,[5] Ordonez simply has no valid claims at all against Hunt & Henriques, Inc.

**Summary and conclusion**

Ordonez seeks to hold Hunt & Henriques, Inc., liable for torts allegedly committed by Hunt & Henriques. He cannot do so, any more than Hunt & Henriques could hold George Ordonez, Sr. liable for the debts of George Ordonez, Jr. The entire complaint should be dismissed with prejudice to avoid unreasonably multiplying litigation against a known-to-be faultless defendant.

But because Ordonez complained about communications that fall within the First Amendment's guarantee of freedom of speech and petition, HHI's special motion to strike the state law cause of action under Code of Civil Procedure § 425.16 should be granted.

And because HHI did not exist until 2016, four months after the last communication that Ordonez complains of, it would be futile to allow him leave to amend—so the motion should be granted *without* leave to amend.

Respectfully submitted,

HUNT & HENRIQUES

/s/

Dated: September 1, 2016

_____
Kurtiss A. Jacobs
Attorneys for Hunt & Henriques, Inc.

_____

5 Declaration of Michael Hunt, ¶¶ 9-14.